UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANGELA CHAPMAN,

                         Plaintiff,

                                                                        Case # 15-CV-6523-FPG

v.

                                                                        DECISION AND ORDER

CAROLYN W. COLVIN, ACTING COMMISSIONER
OF SOCIAL SECURITY,

                        Defendant.
_____

Plaintiff Angela Chapman ("Chapman") brought this action under Title XVI of the Social Security Act ("the Act").[1] ECF No. 1. Chapman has asked this Court to review the Commissioner of Social Security's ("the Commissioner") decision denying her application for Supplemental Security Income ("SSI"). This Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 9, 11. For the reasons that follow, the Commissioner's motion is DENIED and Plaintiff's motion is GRANTED.

## BACKGROUND

On September 13, 2012, Chapman protectively applied for SSI with the Social Security Administration ("the SSA"). Tr.[2] 158-164, 173. In her application, Chapman alleged that she became disabled on October 1, 2010. Tr. 158, 199. She alleged that her disability resulted from fibromyalgia, thrombotic thrombocytopenic purpura, and depression. Tr. 199. At the initial administrative level, the SSA denied Chapman's application. Tr. 84-92. Following that

---

[1]     On January 18, 2017, the Social Security Administration published a final rule announcing revisions to the Act that affect the provisions which govern the Court's decision in this case. 20 C.F.R. §§ 404, 416 (2017). However, those revisions do not affect decisions on applications filed before March 27, 2017. *Id.*
[2]     References to "Tr." are to the administrative record in this matter.

1

decision, Administrative Law Judge John P. Ramos ("the ALJ") considered Chapman's application *de novo*. Tr. 37-51. On April 2, 2014, the ALJ held a hearing (Tr. 56-83), and on June 20, 2014, he found that Chapman was not disabled within the meaning of the Act. Tr. 40-51. That finding became the Commissioner's final decision when the Appeals Council denied Chapman's request for review. Tr. 1-4. On September 2, 2015, Chapman initiated this action. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). A decision by the Commissioner is "conclusive" under the Act if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to the second

step and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* If the claimant does, the ALJ continues to the third step.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("the Listings"). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 416.945(a)(1). The ALJ then proceeds to the fourth step and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform such requirements, then he or she is not disabled. *Id.*

If the claimant cannot perform the requirements of his or her past work, the ALJ proceeds to the fifth and final step. There the burden shifts to the Commissioner to show that the claimant is not disabled. *Bush v. Shalala*, 94 F.3d 40, 44-45 (2d Cir. 1996). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.960(c)(1). To find that the claimant is not disabled, the ALJ

must be satisfied that a significant number of jobs which the claimant can perform exist in the national economy. 20 C.F.R. § 416.960(c)(2).

## DISCUSSION

### I.  The ALJ's Decision

The ALJ's decision analyzed Chapman's application for benefits under the process described above. Tr. 40-51. At step one, the ALJ found that Chapman had not engaged in substantially gainful activity since September 13, 2012. Tr. 42. At step two, the ALJ found that Chapman suffers from four severe impairments: fibromyalgia, degenerative disc disease of the lumbar spine, depressive disorder, and anxiety disorder. Tr. 42-44.

At step three, the ALJ found that none of Chapman's impairments, alone or combined, meet or medically equal any impairment in the Listings. Tr. 44-46. For that reason, the ALJ proceeded to determine Chapman's RFC. Tr. 46. In doing so, the ALJ considered Chapman's testimony about her impairments, the objective medical evidence, and the opinions of five doctors. Tr. 46-49. Before crediting the doctors' opinions, the ALJ assessed what weight to give them. Tr. 48-49. He gave the opinions of Justine Magurno, M.D., a consulting physician, and Sara Long, Ph.D., a consulting psychologist, who each examined Chapman once, "significant weight." Tr. 48. Likewise, he gave the opinions of V. Reddy, Ph.D., a state agency psychologist who examined Chapman's medical records, "significant weight." Tr. 48. Conversely, he gave the opinions of Nadanaguru Akila, M.D., Chapman's treating physician, and Satyavathy

Sarakanti, M.D., Chapman's treating psychiatrist, "minimal weight."[3] Tr. 49. With that in mind, the ALJ concluded that Chapman has the RFC to perform sedentary work.[4] Tr. 46.

At step four, the ALJ found that Chapman has no past relevant work experience. Tr. 49. For that reason, he moved directly to the final step. Tr. 49. At step five, the ALJ considered Chapman's age, education, work experience, and RFC and concluded that jobs Chapman can perform exist in significant numbers in the national economy. Tr. 50-51. On that basis, the ALJ concluded that Chapman is not disabled under the Act. Tr. 51.

**II.     Analysis**

Chapman argues that the ALJ erred by failing to give proper weight to the opinion of her treating psychiatrist.[5] ECF No. 9, at 12-24. Specifically, Chapman claims that the ALJ violated the treating physician rule when he assigned "minimal weight" to Dr. Sarakanti's opinion in determining her RFC. *Id.* at 13. The Commissioner responds that the ALJ did not violate the treating physician rule because, though he did give minimal weight to Dr. Sarakanti's opinion, he gave "good reasons" for doing so. ECF No. 11, at 12-14.

The treating physician rule is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03-CV-0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion regarding the "nature

---

[3]     The ALJ did stray from these general weight assignments at times. For instance, he gave Dr. Magurno's opinion that Chapman should wholly avoid environmental irritants like dust and fumes "reduced weight." Tr. 48. He also gave Dr. Akila's opinions regarding Chapman's postural and environmental limitations "reduced weight" instead of "minimal weight." Tr. 49.

[4]     "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

[5]     Chapman challenges the ALJ's decision on other grounds, but this Court declines to reach those claims. Chapman's argument that the ALJ failed to give proper weight to the opinion of her treating physician is sufficient to dispose of this matter.

and severity" of the claimant's impairments when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2). The rule affords deference to treating physicians because they are "most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)" and bring "a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." *Id.*

Consistent with that principle, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6P, 1996 WL 374180 (July 2, 1996), *cited with approval in Richardson v. Astrue*, No. 09-CV-1941, 2009 WL 4793994, *7 (S.D.N.Y. Dec. 14, 2009). To that end, "[t]he opinions of physicians or psychologists who do not have a treatment relationship with the [claimant] are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." *Id.* That principle applies with even greater force where, as here, the claimant suffers from mental impairments: "[b]ecause mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health." *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010).

That is not to say an ALJ may never discount the opinion of a treating physician. *See* 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). As noted above, a treating physician's opinion is only entitled to controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §

6

416.927(c)(2). But even if an ALJ finds a treating physician's opinion does not satisfy both deference-triggering requirements, he or she may not summarily dismiss it. *See id.* The Act identifies factors that the ALJ must consider in determining how much weight to give such an opinion. *Id.* Those factors include the length, nature and extent of the treatment relationship, the frequency of examination, the evidence in support of the treating physician's opinion, the consistency of the opinion with the record as a whole, and whether the opinion is from a specialist. 20 C.F.R. §§ 416.927(c)(2)(i)-(ii), (c)(3)-(6). Further, in addressing those factors, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). Regardless of the weight assigned to the physicians' opinions, the ALJ must not substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician." *Garcia v. Barnhart*, No. 07-CV-534, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003).

Here, the ALJ gave "minimal weight" to Dr. Sarakanti's opinions regarding Chapman's mental impairments. Tr. 49. Dr. Sarakanti has treated Chapman for mental health and psychiatric impairments at least twice per month since May 2013, and in the course of those treatments she diagnosed Chapman with panic disorder with agoraphobia and depressive disorder. Tr. 299-300. On December 13, 2013, Dr. Sarakanti completed a Mental Residual Functional Capacity Questionnaire. Tr. 298-303. There, Dr. Sarakanti noted that Chapman "demonstrates severe anxiety symptoms and panic attacks in public," "also demonstrates obsessive compulsive behaviors which impact her daily functioning and cause interruptions and delays in her completing and following through with tasks," and "would likely demonstrate

severe decompensation if she [had] to be in a public setting for any length of time." Tr. 303. Dr. Sarakanti also indicated that Chapman has little or no ability to maintain regular attendance, complete a normal workday or week without interruptions from psychologically based symptoms, or work appropriately with others. *Id.* Regarding Chapman's prognosis, Dr. Sarakanti stated that Chapman "has medical issues which interfere with her ability to take certain psychotropic medications that would prove to be most beneficial for symptom management." Tr. 300. For that reason, Dr. Sarakanti characterized that Chapman's prognosis as "poor to fair." *Id.*

Despite Dr. Sarakanti's history with Chapman, the ALJ gave her opinion regarding Chapman's mental health impairments "minimal weight." That decision compels remand for two reasons. First, the ALJ's decision fails to provide "good reasons" for giving Dr. Sarakanti's opinion less than controlling weight. Second, even if Dr. Sarakanti's opinion was entitled to something less than controlling weight, the ALJ's decision fails to address several of the factors that the Act requires an ALJ to address to determine what weight to give a treating physician's opinion.

### 1. The ALJ Did Not Provide "Good Reasons" for Giving Dr. Sarakanti's Opinion Less than Controlling Weight.

The ALJ gave Dr. Sarakanti's opinion less than controlling weight because he found that substantial evidence in the record contracted Dr. Sarakanti's opinion. Tr. 49. In particular, the ALJ found that the opinions of Drs. Akila and Long, Chapman's Global Assessment of Functioning ("GAF") score, and a number of other details pulled from the record undermined Dr. Sarakanti's opinion. Tr. 49. The Court disagrees.

8

### a. Dr. Akila's Opinion

Dr. Akila's opinion is not a "good reason" to discredit Dr. Sarakanti's opinion. As an initial matter, the ALJ found that Dr. Akila's opinion was entitled to only "minimal weight." Tr. 49. Specifically, the ALJ afforded Dr. Akila's opinion regarding Chapman's mental impairments—the portion of his opinion corresponding to Dr. Sarakanti's opinion—minimal weight. Tr. 49. ("The undersigned gives minimal weight to primary care physician Dr. Akila's opinions regarding [Chapman's] mental work-related functional limitations, because they are not consistent with the overall evidence . . . ."). Without distinguishing the minimal weight assigned to Dr. Akila's opinion from the minimal weight assigned to Dr. Sarakanti's, the ALJ then used Dr. Akila's opinion as a reason to discount Dr. Sarakanti's opinion. Tr. 49. That inconsistency gives the Court pause. *Cf. Salisbury v. Colvin*, No. 13-CV-2805, 2015 WL 5458816, at *36 (S.D.N.Y. Sept. 21, 2015) (noting "a subtly insidious incongruit[y]" where an ALJ dismissed one physician's work-related assessment because that physician was not a vocational expert but heavily relied on the work-related assessment of another physician who was also not a vocational expert).

Even setting that aside, the ALJ's premise—that Dr. Akila's opinion is inconsistent with Dr. Sarakanti's—is incorrect. Dr. Akila's opinion is consistent with Dr. Sarakanti's. To illustrate, Dr. Sarakanti found that Chapman's mental impairments leave her with poor to no ability to use public transportation. Tr. 299, 714. Similarly, Dr. Akila found that she unable to use public transportation. Tr. 490. Dr. Sarakanti found that Chapman's ability to interact appropriately with the general public is "fair." Tr. 299. Similarly, Dr. Akila found that Chapman's inability to interact appropriately with the public is "marked." Tr. 493. Dr. Sarakanti found that Chapman's ability to understand and remember simple instructions is

"good." Tr. 301. Similarly, Dr. Akila found that Chapman's inability to understand and remember simple instructions is "moderate." Tr. 492.

To be sure, the two doctors completed different forms, which asked them different questions, and relied on different scales. *Compare* Tr. 492-94 (asking Dr. Akila to label Chapman's *inability* to perform a certain function as "none," "mild," "moderate," "marked," or "extreme"), *with* Tr. 299-303 (asking Dr. Sarakanti to label Chapman's *ability* to perform a certain function as "unlimited or very good," "good," "fair," or "poor to none"), *and* Tr. 714-17 (same). Necessarily, their responses are not identical. But that does not mean that they are inconsistent. If anything, the occasional difference between Dr. Sarakanti's opinion of Chapman's mental impairments and Dr. Akila's is one of minor degree and not substance. *Compare* Tr. 493 (finding Chapman has a "moderate" inability to interact appropriately with co-workers), *with* Tr. 301 (finding Chapman has a "poor" ability to interact with co-workers). At any rate, Dr. Akila himself did not consider his conclusions to be inconsistent with Dr. Sarakanti's: when asked to identify factors that support his assessment of Chapman's mental impairments, Dr. Akila cited Dr. Sarakanti's opinion. Tr. 493. Accordingly, Dr. Akila's opinion does not amount to substantial, inconsistent evidence.

### b. Details from the Record

The few details that the ALJ pulled from the record to discredit Dr. Sarakanti's opinion do not amount to "good reasons." For evidence contradicting Dr. Sarakanti's opinion, the ALJ pointed to Chapman's "one friend and good family relationships," her appropriate interactions "with medical personnel during examinations," that she once "attended her daughters' church play," that she "keeps herself busy by caring for her three children at home" and tends "to do for everyone at the expense of herself," and that "she has been devoting more time to working on

crafts." Tr. 49. The Commissioner characterizes this list as "a litany of factors that contradicted Dr. Sarakanti's pessimistic assessment of [Chapman's] functional capabilities." ECF No. 11, at 14. That "litany of factors" does not survive inspection.

The ALJ's list of contradicting evidence is problematic because it highlights isolated instances of Chapman's ability to function in society while ignoring evidence that tends to demonstrate Chapman's impairments. *Trumpower v. Colvin*, No. 13-CV-6661, 2015 WL 162991, at *17 (W.D.N.Y. Jan. 13, 2015) ("[An ALJ] cannot pick and choose evidence that supports a particular conclusion."). It is again problematic because in putting this list together, the ALJ pulled facts from Dr. Sarakanti's notes and simply came to his own contradictory conclusion about them. *Calzada v. Astrue*, 753 F. Supp. 2d 250, 277 (S.D.N.Y. 2010) ("An ALJ must not substitute his own assessment of the relative merits of the objective evidence . . . for that of a treating physician."). But even setting those issues aside, the ALJ's list of contradicting evidence is problematic because the details that the ALJ highlights do not actually contradict Dr. Sarakanti's opinion.

To begin, maintaining a single friendship and good family relationships does not necessarily undercut Dr. Sarakanti's opinion that Chapman has social limitations. *See Rodriguez v. Astrue*, No. 07-CV-534, 2009 WL 637154, at *22 (S.D.N.Y. Mar. 9, 2009) ("[T]he ability to get along with family and friends does not necessarily mean a person is not limited in social functioning generally."). The same is true of Chapman's ability to act appropriately with medical personnel in medical settings: that Chapman can respond appropriately to doctors in controlled, medical settings does not necessarily contradict Dr. Sarakanti's conclusion that Chapman's ability to interact appropriately with the general public is between "fair," Tr. 299, and "poor." Tr. 714. *But cf. Lovell v. Colvin*, 137 F. Supp. 3d 347, 352 (W.D.N.Y. 2015)

(finding the claimant's ability to interact appropriately with medical personnel, among other things, indicated that the claimant had "no more than moderate difficulties in social functioning").

Regarding Chapman's attendance at her daughters' church play, the fact that the ALJ could find in the medical records only one instance of Chapman going out in public is more telling than that single instance itself. In fact, the medical records frequently mention her inability to leave her house. *See, e.g.*, Tr. 634 ("[Chapman] struggles to get out of the house."); Tr. 639 ("She typically spends most of her time in the house, with the doors locked, and the shades drawn . . . ."); Tr. 647 ("She is now sitting at home in the dark most days, secluding herself to her room . . . ."); Tr. 645 ("She continues to isolate herself in the house."). Finally, that Chapman "keeps herself busy by caring for her three children at home" and that "she has been devoting more time to working on crafts" has no logical connection to her social functioning. For those reasons, the ALJ's "litany of factors" does not amount to substantial inconsistent evidence.

### c. Chapman's GAF Score

The ALJ identified Chapman's GAF score as a point of conflict, but that too is insufficient. "A GAF score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in social, occupational or school functioning." *Laracuente v. Colvin*, No. 15-CV-9583, 2016 WL 4004680, at *11 n.2 (S.D.N.Y. July 26, 2016) (citing AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. rev. 2000)). Chapman's GAF score is 56. Tr. 637. In contrast, Dr. Sarakanti describes significant social and occupational impairments. *See, e.g.*, Tr. 302 ("Angela demonstrates severe anxiety symptoms

and panic attacks in public."). Though Dr. Sarakanti's opinion seems inconsistent with Chapman's GAF score, that inconsistency is not as important as it might seem.

In the context of SSI, GAF scores are of limited value. "[A]s a global reference intended to aid in treatment, a GAF score does not . . . necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." *Beck v. Colvin*, No. 13–CV–6014, 2014 WL 1837611, at *10 (W.D.N.Y. May 8, 2014) (internal quotation marks omitted) (noting that, "[t]o the extent the ALJ rejected [a treating physician's opinion] as incompatible with [a] GAF score," the ALJ "failed to explain why a single GAF score, which is a generalized assessment, superseded [the treating physician's] more precise opinion"). Moreover, the literature regarding the GAF scale indicates a general lack of reliability. *See* I.H. Monrad Aas, *Global Assesment of Functioning (GAF): Properties and Frontier of Current Knowledge*, ANNALS OF GENERAL PSYCHIATRY, May 7, 2010, http://annals-general-psychiatry.biomedcentral.com/articles/10.1186/1744-859X-9-20 (reviewing relevant literature and concluding that it indicated insufficient reliability in clinical settings as well as a lack of precision). Indeed, the Psychiatric Association removed the GAF scale from the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders*. *See* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. rev. 2013). But even if Chapman's GAF score was a reliable assessment of her ability to work, "[t]he ALJ . . . is not permitted to 'rely on any test score alone.'" *Walterich v. Astrue*, 578 F. Supp. 2d 482, 513 (W.D.N.Y. 2008) (quoting 20 C.F.R. § 416.926a(e)(4)(i)). On that basis, Chapman's GAF score does not amount to substantial evidence inconsistent with Dr. Sarakanti's opinion.

### d. Dr. Long's Opinion

Finally, Dr. Long's opinion alone cannot discredit Dr. Sarakanti's. In contrast to his view of Dr. Sarakanti's opinion, the ALJ gave Dr. Long's opinion—rendered in 2012, prior to the commencement of Chapman's mental health treatment—significant weight. Tr. 48. He did so because of Dr. Long's "programmatic expertise and the relative consistency of [her] opinions with the medical evidence." Tr. 48. He then gave Dr. Sarakanti's opinion minimal weight, at least in part, because it conflicts with Dr. Long's. Tr. 49. That distribution of authority "turns the treating-physician rule on its head." *Rodriguez*, 2009 WL 637154, at *25.

The treating physician rule, at its most fundamental level, tips the scales in favor of a treating physician's opinion. *See id.* ("The regulations and case law rest on the premise that a doctor who personally treats a claimant, and in particular a doctor who has a long-term treating relationship with the claimant, is likely to have a better understanding of her condition than a doctor who only examines her on one occasion."). Though the treating physician rule can be overcome, "[n]ot all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Particularly in the context of mental health, the opinion of a treating physician deserves more respect than that of a consulting physician. *See Rodriguez*, 2009 WL 637154, at *26 ("The mandate of the treating-physician rule to give greater weight to the opinions of doctors who have a relationship with a plaintiff is particularly important in the mental-health context."); *see also Westphal v. Eastman Kodak Co.*, No. 05-CV-1720380, 2006 WL 1720380, at *4–5 (W.D.N.Y. June 21, 2006) ("Because of the inherent subjectivity of a psychiatric diagnosis, and because a proper diagnosis requires a personal evaluation of the patient's credibility and affect, it is the

preferred practice that a psychiatric diagnosis be made based upon a personal interview with the patient.").

Chapman has seen Dr. Sarakanti twice a month since May 2013. Tr. 300. Dr. Long examined Chapman once. Tr. 278-81. The treating physician rule mandates that Dr. Sarakanti's relationship with Chapman takes precedence over Dr. Long's "programmatic expertise." *See Rodriguez*, 2009 WL 637154, at *26 (finding that the spirit of the treating physician rule requires an ALJ to give more weight to an examining physician's opinion than to the opinion of a non-examining physician, even where the non-examining physician has programmatic expertise). With that in mind, Dr. Long's opinion, without more, cannot establish sufficient evidence to overcome the treating physician rule.

### 2. The ALJ Failed to Adequately Address the Factors for Determining What Weight to Give a Treating Physician's Opinion.

Even if the ALJ provided "good reasons" for giving Dr. Sarakanti's opinion less than controlling weight, remand is still required because he failed to address all of the factors that the Act requires an ALJ to consider when deciding what weight to give a treating physician's opinion. When an ALJ finds a treating physician's opinion is not entitled to controlling weight, the Act requires the ALJ to consider several factors. See 20 C.F.R. § 416.927(c)(2); *see also Richardson*, 2009 WL 4793994, at *9. Those factors include the length of time that the physician has been treating the claimant, the nature and extent of the physician's relationship with the claimant, the amount of evidence the physician presents in support of his or her opinion, whether the physician is a specialist, and the consistency of the physician's opinion with other medical evidence in the record. 20 C.F.R. §§ 416.927(c)(2)(i)-(ii), (c)(3)-(6). An ALJ must not only consider those factors in the course of his or her decision-making process, the ALJ must also demonstrate that consideration in his or her written decision by "comprehensively set[ting]

forth [his or her] reasons for the weight assigned." *Halloran*, 362 F.3d at 33. Failure to address all of the factors compels remand. *Schaal*, 134 F.3d at 504.

Here, the ALJ addressed only two of the five factors. As discussed above, the ALJ considered the consistency of Dr. Sarakanti's opinion with the other medical evidence and opinions in the record. Tr. 49. The ALJ also noted that Chapman did not receive "specialized mental health treatment until May 2013." Tr. 49. But the ALJ did not address the nature and extent of Chapman's relationship with Dr. Sarakanti. He also failed to mention that Dr. Sarakanti is a specialist in psychiatry. Lastly, he did not discuss any of the evidence that Dr. Sarakanti presented to support her opinion. For these reasons, remand is required. *Schaal*, 134 F.3d at 504.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED. This matter is REMANDED to the Commissioner for further proceedings in accordance with this decision.

IT IS SO ORDERED.

Dated: January 27, 2017
      Rochester, New York

                                                HON. FRANK P. GERACI, JR.
                                                Chief Judge
                                                United States District Court